842 F.2d 58
 56 USLW 2534, 45 Ed. Law Rep. 1008
 Marilyn ARONS, Appellant,
v.
NEW JERSEY STATE BOARD OF EDUCATION, Ronald I. Parker,
Acting Director of the Office of Administrative Law, Saul
Cooperman, Commissioner of Education, Jeffrey Osowski,
Director of Special Education, New Jersey Department of
Education, Appellees.
 No. 87-5278.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1987.
Decided March 16, 1988.
 
 David C. Vladeck (argued), Alan B. Morrison, Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, D.C., for appellant.
 Andrea M. Silkowitz (argued), James J. Ciancia, Asst. Attys. Gen., W. Cary Edwards, Atty. Gen., of N.J., Trenton, N.J., for appellees.
 Before WEIS, HIGGINBOTHAM and ROSENN, Circuit Judges
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Plaintiff has substantial expertise in the education of handicapped children. Regulations of the State of New Jersey permit her to act as a lay advocate on behalf of parents of handicapped children in administrative hearings to determine the children's appropriate educational placement. The same regulations, however, prohibit her from receiving fees for legal representation in those proceedings. The district court rejected her challenge to that provision and granted summary judgment for defendants. We will affirm.
 
 
 2
 In 1985, plaintiff brought suit pro se alleging "educational malpractice" against the New Jersey State Board of Education, the New Jersey Department of Education, the Office of Administrative Law, and several state education officials. She added counts asserting libel, misappropriation of her name, tortious interference with her grant applications, as well as a claim seeking compensation for her work as a lay advocate representing parents of handicapped children. The court entered judgment for all defendants on varying grounds. Only the plaintiff's claim for compensation has been appealed.
 
 
 3
 The mother of two handicapped children, plaintiff has played an active role in New Jersey special education issues since 1976. As a professional educator, she specializes in curriculum development for exceptional children. As a lay advocate, she acts on behalf of parents of handicapped children at administrative hearings conducted by the New Jersey Office of Administrative Law in compliance with the Education for All Handicapped Children Act, 20 U.S.C. Secs. 1401-1420 (1976 & 1987 Supp.)
 
 
 4
 The Act prescribes due process hearings at which parents may contest the appropriateness of the education their handicapped children are receiving. Although the parents may proceed pro se, the Act gives them the "right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children...." 20 U.S.C. Sec. 1415(d)(1).
 
 
 5
 Plaintiff is not a lawyer; therefore, she participates in these hearings as an "individual[ ] with special knowledge or training." Her performance as a lay advocate is authorized and limited by regulations adopted by the New Jersey Office of Administrative Law, which provide that:
 
 
 6
 "(a) At a hearing, any party may be accompanied and advised by legal counsel or by individuals with special knowledge or training with respect to handicapped pupils and their educational needs, or both
 
 
 7
 "(b) A non-lawyer seeking to represent a party shall comply with the application process ... and shall be bound by the approval procedures, limitations and practice requirements contained [therein]...."
 
 
 8
 N.J.Admin.Code 1:6A-4.2. According to section 4.2(b)(4) of that provision, nonlawyers may not receive a fee for representing a party in administrative proceedings.
 
 
 9
 In the original complaint, plaintiff sought compensation from the state for her services as a lay advocate at various hearings. In the amended complaint, however, she requested permission to charge the parents fees for her services as would an attorney. She noted that she has spent more than $6,000 per year of her own money to pay expenses incurred in the course of her representation activities. In particular, plaintiff itemized costs of transportation, telephone, heat, and light as well as charges for the purchase of legal materials and research supplies. She argues that she has "done work equal to that of an attorney within the State of New Jersey yet is denied equal pay for that equal work because she is not a member of the New Jersey Bar Association or a graduate of a law school."
 
 
 10
 The district court acknowledged the plaintiff's considerable efforts as a lay advocate and recognized that she "undoubtedly performs an invaluable service." Nevertheless, the district court held that the Act did not create a right to compensation for lay advocates who are functioning as lawyers by offering and cross-examining witnesses or writing briefs. The New Jersey rule allowing compensation to lawyers but excluding it from lay advocates, in the district court's view, is not arbitrary; rather, the rule furthers the state's legitimate interest in regulating the practice of law by nonlawyers.
 
 
 11
 The district court also pointed out that the prohibition against receiving fees for legal services in no way interferes with the plaintiff's right to be paid for her educational expertise in assisting handicapped pupils. She is free to charge as an expert witness or as an educational consultant for time spent in preparing for and appearing at the hearings. As the court observed, the rule only bars "compensation for services for which she has no recognized expertise or training--in the provision of legal services."
 
 
 12
 On appeal, plaintiff contends first that the Act preempts the New Jersey no-fee provision and second that the state rule violates the Equal Protection Clause. Defendants argue that because Congress did not demonstrate a clear and unambiguous intent to displace state law when it enacted the grant-in-aid provisions of the Act, the New Jersey rule must be enforced.
 
 A.
 
 13
 The Education for All Handicapped Children Act of 1975 is a comprehensive scheme designed by Congress to help the states comply with their constitutional obligation to provide public education for handicapped children. Smith v. Robinson, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3466, 82 L.Ed.2d 746 (1984). The statute conditions federal financial assistance upon a state's compliance with the substantive and procedural goals of the Act. Honig v. Doe, --- U.S. ----, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).
 
 
 14
 The statute's procedural provisions encourage parents to participate in planning a free appropriate educational program for their children, and a comprehensive system of administrative and judicial safeguards facilitates review of decisions that the parents contest. Id. at ----, 108 S.Ct. at 606. Not only does the Act provide for mandatory administrative hearings, but it gives parents the right to advice and consultation with educational experts. 20 U.S.C. Sec. 1415(d)(1).
 
 
 15
 Plaintiff contends that New Jersey's prohibition against fees cannot stand because of federal preemption. The standard governing federal preemption of state statutes and regulations most often is based on a clear or unambiguous expression of congressional intent. If Congress demonstrates an intent to occupy a given field, any state law falling within that field is preempted. If Congress, however, does not entirely displace state regulation over the matter, state law is still preempted to the extent it actually conflicts with the federal law or stands as an obstacle to achieving the full purposes and objectives of Congress. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).
 
 
 16
 In this case, plaintiff does not argue that Congress sought to occupy the field completely or that the state rule conflicts literally with the federal statute. Instead, she says that the "no fee rule is preempted because it thwarts the achievement of the goals Congress set in the statute." Essentially, her position is that the Act "confers on parents the right to be represented by a lay advocate," and so Congress must have intended for advocates to charge fees in order to encourage the continued use of such services.
 
 
 17
 As support for this theory, plaintiff cites Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). There, the Florida Bar challenged the right of a lay person to represent clients before the Patent Office. The Supreme Court rejected the challenge on the ground that Congress had empowered the Commissioner of Patents to prescribe regulations governing the practice by "agents, attorneys, or other persons representing applicants or other parties before the Patent Office." Id. at 384, 83 S.Ct. at 1325 (emphasis omitted). Pursuant to that statutory authorization, the Commissioner had established two separate registers of persons entitled to represent applicants seeking patents. One register consisted of names of attorneys; the other listed nonlawyer "agents." Id.
 
 
 18
 In Sperry, the Supreme Court called attention to the long history of practice by nonlawyer agents before the Patent Office and noted the extended congressional debate over the matter. Because patents confer federal rights, the Court concluded it could not ignore the potentially disruptive impact on patent office practice which might occur if nonlawyers were barred from appearing. Such a ban could force lay practitioners to relocate, apply for admission to the state bar or even discontinue practice. Id. at 401, 83 S.Ct. at 1334. Consequently, the states were not permitted to prohibit nonlawyers from performing services for patent applicants within the state.
 
 
 19
 Sperry, however, is readily distinguishable. First, unlike Sperry, the Office of Administrative Law here is a state, not a federal, agency. Second, there is no time-honored tradition of practice by nonlawyers before this state entity; nor did Congress extensively debate the issue. Third, the statute in Sperry referred to persons "representing applicants". Here, in contrast, the Act states only that a party "may be accompanied and advised by counsel and by individuals with special knowledge or training." 20 U.S.C. Sec. 1415(d)(1) (emphasis added).
 
 
 20
 The carefully drawn statutory language does not authorize these specially qualified individuals to render legal services. Although the Act does give "[a]ny party to any hearing" the right to "present evidence and confront, cross-examine, and compel the attendance of witnesses," Id. Sec. 1415(d)(2), those functions are not designated to be performed by lay advocates. Furthermore, the statute does not use the word "represent" in subsection (d)(1), as would be expected if Congress intended to place expert and legal counsel on the same footing.
 
 
 21
 Our search through the legislative history has failed to uncover any indication that Congress contemplated that the "individuals with special knowledge" would act in a representative capacity. The Senate Report describes the "individual['s]" role as one of consultation, with emphasis on the responsibility to identify educational problems, evaluate them, and determine proper educational placement. S.Rep. No. 168, 94th Cong., 1st Sess., reprinted in 1975 U.S.Code Cong. & Admin.News pp. 1425, 1470-71.
 
 
 22
 The provisions's text and history thus cast substantial doubt on the plaintiff's statement in her brief that "Congress intended that no distinction be drawn between lawyers and lay advocates." The amendments adopted in 1986 which permit a prevailing party to recover attorney's fees apply not only at the judicial level but also at the administrative stage.[1] Significantly, those amendments contain no provision granting fees for representation by lay advocates. The Conference Committee Report explains, "[t]he conferees intend that the term 'attorneys fees as part of the costs' includes reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation ... necessary for the preparation of the parent or guardian's case...." H.R.Conf.Rep. No. 687, 99th Cong. 1st Sess. (1986).
 
 
 23
 That is not to say that plaintiff here may not perform traditional representation functions during administrative hearings. New Jersey Office of Administrative Law regulations authorize her to do so. As presently drawn, however, those regulations do not allow her to collect a fee for such services. We emphasize, as did the district court, that nothing prevents her from receiving compensation for work done as an expert consultant or witness. Although we appreciate the difficulty of trying to allocate between compensable time spent in consultation and noncompensable time spent in legal representation, the task is not insurmountable. The receipt of consultation fees should eliminate the financial losses Arons claims to have sustained in the course of providing assistance to parents of handicapped children.
 
 
 24
 The highly specific language of the Act has led the Supreme Court to read the statutory provisions narrowly. Thus, in Smith v. Robinson, the Court refused to read into the pre-1986 wording of the Act a grant of attorney's fees. 468 U.S. at 1014, 104 S.Ct. at 3469. In Honig, the Court declined to "re-write the statute" by adding an emergency exception for dangerous students. 108 S.Ct. at 604. See also Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).
 
 
 25
 On its face, the Act is silent about any right of "individuals with special knowledge" to charge fees for legal representation. It is unlikely this omission was inadvertent because the states historically have exercised strict control over the professional conduct of attorneys. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). As the Supreme Court recognized, "the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).
 
 
 26
 In the absence of explicit provisions, we are not convinced that Congress intended to limit the states' traditional control over the practice of law. Nothing in the statutory language demonstrates a congressional desire to supersede the states' authority to regulate the legal profession. We, too, decline to "rewrite the statute."
 
 
 27
 The New Jersey no-fee rule will not frustrate the Act's purpose of providing parents with expert assistance in navigating the administrative process. As we have noted, nothing hinders plaintiff from charging for her expert services in giving testimony, preparing technical reports, consulting with parents, attending hearings, or advising parents about educational decisions.
 
 B.
 
 28
 We do not find merit in the plaintiff's Equal Protection challenge to the New Jersey rule. She contends that because she is a nonlawyer, she is unfairly prevented from receiving a fee for acting as an advocate--although a lawyer may charge for identical services. Plaintiff concedes, however, that the rational relationship test applies in these circumstances. See Edelstein v. Wilentz, 812 F.2d 128, 132 (3d Cir.1987).
 
 
 29
 The district court reasoned that since New Jersey could ban the practice of law altogether by unlicensed persons, the state could impose restrictions on lay practitioners. See Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) (having chosen to legalize gambling, Puerto Rico not barred from taking less intrusive steps to restrict advertising). The more rigorous standards of legal training, including ethical and fiduciary restraints, contrasted with the less stringent requirements expected from lay representatives also were significant factors in the court's consideration. The district court expressed concern that permitting lay advocates to charge for their representation services would encourage the proliferation of unlicensed practice to the public detriment. Accordingly, the court found that the New Jersey rule met the rational relationship test.
 
 
 30
 We find no error in the district court's disposition of the Equal Protection claim. Plaintiff has not shown that the New Jersey rule is irrational and unrelated to legitimate state concerns.
 
 
 31
 Plaintiff has failed to persuade us that, as a lay advocate, she is entitled to charge fees for services that constitute the practice of law. The judgment of the district court will be affirmed.
 
 
 
 [1]
 For a discussion of the attorney fees provision, see Winnick, Congress, Smith v. Robinson, and the Myth of Attorney Representation in Special Education Hearings: Is Attorney Representation Desirable, 37 Syracuse L.Rev. 1161 (1987); Notes, Education Law--The Handicapped Children's Protection Act of 1986: The Award of Attorney Fees in Litigation Under the Education of the Handicapped Act, 11 S.Ill.U.L.J. 381 (1987)